UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:10-CR-1128-14 |
| | § | (CIVIL ACTION NO. 2:14-CV-279) |
| JOSE MANUEL LEDEZMA | § | |

**ORDER DISMISSING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, DENYING CERTIFICATE OF APPEALABILITY**

Jose Manuel Ledezma (Ledezma) filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, along with his memorandum in support and his motion to stay the proceedings. D.E. 726, 727, 728. The Court reviewed the § 2255 motion and concludes that summary dismissal pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (2014) (2255 Rules) is appropriate and that no government response is necessary. For the reasons stated herein, the Court denies Ledezma's motion to stay the proceedings, dismisses his motion to vacate, set aside or correct sentence and denies him a certificate of appealability.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

Ledezma was named in a multi-count Second Superseding Indictment, along with thirteen others, in April 2011. D.E. 271. Count Five charged Ledezma and four others with conspiracy to possess with intent to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). *Id*. The other counts included conspiracy to murder, three counts of assault with a dangerous weapon, and two counts of possession of a firearm in furtherance of a crime of violence. *Id*. Ledezma's participation in the

conspiracy consisted of telephone calls to another member attempting to broker a sale of methamphetamine and assisting in the delivery of a sample to the prospective buyer's representative. D.E. 374, ¶ 17. Ledezma also admitted brokering shipments of marijuana and cocaine in 2009 with the same persons in the current conspiracy, but those shipments were not included in the relevant conduct. *Id.*

Ledezma was arrested in May 2011, and appeared in federal court for the first time on May 5, 2011. D.E. 279, 280. He was appointed counsel and arraigned. D.E. 282, Minute Entry May 11, 2011. During arraignment, Ledezma was advised that he was subject to a minimum sentence of 10 years and informed of the maximum sentence of life imprisonment, a fine up to $4 million, at least 4 years supervised release, and a special assessment of $100. ERO, May 11, 2011, at 11:27:31/11:27:57. Ledezma testified he understood the possible penalties. *Id.*, at 11:28:06.

In June 2011, Ledezma pled guilty to Count Five pursuant to a plea agreement. D.E. 313, 315. During rearraignment, Ledezma testified that he was competent, had enough time with his attorney, counsel had answered all his questions, and he was satisfied with counsel's advice and efforts. D.E. 415, pp. 11-13. The Court advised Ledezma of the elements of Count Five. Ledezma testified he understood the elements and had discussed the indictment with counsel. *Id*, p. 22. Ledezma testified he understood his trial rights, discussed them with his attorney and wished to waive them and plead guilty to Count Five. *Id.*, p. 26-27.

Counsel for the government summarized the plea agreement. *Id.*, p. 28. In exchange for Ledezma's guilty plea to Count Five, the government would agree to recommend maximum credit for acceptance of responsibility and a sentence at the low end of the applicable guideline range. *Id*. Ledezma identified the plea agreement as his; testified there were no other agreements;

he was not promised leniency in exchange for the plea agreement; and he read and discussed the agreement with counsel before he signed it. *Id*., pp. 29-31.

The Court reviewed the range of punishment with Ledezma, "a mandatory minimum of ten years up to life imprisonment plus a fine up to $4 million, at least five years supervised release that can last the rest of your life, and a $100 special assessment." Ledezma testified he understood. *Id*., p. 34. The Court asked whether Ledezma had discussed with counsel how the advisory sentencing guidelines might apply to him, and Ledezma testified counsel had. *Id*., pp. 36-37. The Court reviewed potential enhancements regarding Count Five, whether the methamphetamine was imported from Mexico, bribery of a public official, firearms in the vicinity of the seized drugs, enhancement for purity, and distribution within a prison. *Id*., pp. 43-46. Ledezma testified he understood. *Id*., p. 46.

The government outlined the facts related to the drug conspiracy in Count Five, which included a description of the methamphetamine seized from the Allencrest house and that it was found with 18 firearms. *Id*., pp. 81-83. When Ledezma was asked if the government's factual recitation was correct, he testified that it was. His counsel interjected that there was a sentencing issue as to the quantity of methamphetamine for which Ledezma was responsible. *Id*., pp. 83-87.[1]

---

[1]
```
12 All right. As to Count Five, Mr. Ledezma, have you
13 heard the statement of the Assistant U.S. Attorney?
14 DEFENDANT LEDEZMA: Yes, your Honor.
15 THE COURT: You need to speak up please, sir.
16 DEFENDANT LEDEZMA: Yes, your Honor.
17 THE COURT: Is it correct?
18 MR. ARISMENDEZ: We too would join with Mr. Thomas
19 here, your Honor, on that one issue. We realize it's a
20 sentencing issue. We would assert that at that time as to the
21 scope being the one ounce that he was actually involved in
22 that.
23 THE COURT: One ounce?
24 MR. ARISMENDEZ: Or the telephone conversation, I'm
25 sorry, whatever.
THE COURT: One gram.
```

Sentencing was held in March 2012. Ledezma testified that he had the PSR for more than 35 days, reviewed it with his attorney in Spanish, and counsel answered his questions. He testified that he was not satisfied with counsel's representation because counsel had not explained everything to him and he wanted to bring forward his objections to the PSR. D.E. 577, pp. 8-9. The objections were to the quantity of methamphetamine. Ledezma stated that he did not have any methamphetamine in his possession, that his only role was to make a phone call for his uncle to set up delivery of a sample of methamphetamine and he had nothing to do with the methamphetamine that was in the Allencrest house. The Court asked Ledezma if he wanted to withdraw his plea, but Ledezma was not certain. He thought he would be sentenced based upon the sample he arranged to be delivered. The Court recessed to allow Ledezma to confer with counsel. After the recess, Ledezma's counsel and the government reached an agreement whereby the government would not oppose Ledezma's objection to the firearms enhancement. *Id.*, p. 32. At that time, Ledezma stated there were no other objections to the PSR and no other mistakes. *Id.*, p.33.

With elimination of the firearms enhancement, Ledezma's offense level was 37 with a criminal history category of V resulting in a guideline range of 324 to 405 months imprisonment. The government recommended 324 months. *Id*. Defense counsel urged a departure below the guidelines based upon the age of Ledezma's criminal history and his limited participation in the

---

> 2 MR. ARISMENDEZ: One gram, I apologize.
> 3 THE COURT: All right. So that -- you're reserving
> 4 that issue for sentencing.
> 5 MR. ARISMENDEZ: Yes, Judge.
> 6 THE COURT: Okay. Anything else you disagree with,
> 7 Mr. Ledezma?
> 8 DEFENDANT LEDEZMA: No, ma'am.
> 9 THE COURT: All right. Then I do find that there is
> 10 a factual basis for each of your pleas to each of these Counts.

*Id*.

conspiracy. The Court sentenced Ledezma to 324 months, 5 years supervised release, no fine, and imposed a special assessment of $100. *Id.*, p. 38. The Court advised Ledezma of his right to appeal. *Id.*, p. 39.

Ledezma appealed, but the Fifth Circuit Court of Appeals dismissed the appeal as frivolous. *United States v. Ledezma*, No. 12-40304 (5th Cir. May 21, 2013) (per curiam) (designated unpublished). Ledezma timely filed his present motion.

### III. MOVANT'S ALLEGATIONS

Ledezma complains that his counsel performed deficiently on multiple grounds. He claims that Counsel failed to: 1) object to the Court's participation in plea negotiations, 2) challenge the government's breach of the plea agreement at sentencing, 3) submit the type and purity of the controlled substance to a jury through a special verdict form, and 4) submit lab reports regarding the drug type for which Ledezma was held accountable when that controlled Ledezma's minimum sentence.

Ledezma also requests that the Court stay these proceedings based upon his FOIA request for a copy of the laboratory reports on the drugs for which he was held responsible. D.E. 728.

### IV. ANALYSIS

**A.   28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of

injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). "[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

B.   **Ineffective Assistance of Counsel Claims**

   1. *Standard for ineffectiveness of counsel*

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

2. *Claim that counsel should have objected to the Court's participation in plea negotiations*

Ledezma claims that the Court interfered in plea negotiations and counsel should have objected to the Court's participation. A district judge is prohibited from involvement in plea negotiations by Rule 11(c),[2] which the Fifth Circuit has characterized as a "bright line rule" and "an absolute prohibition on all forms of judicial participation in or interference in the plea negotiation process." *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir. 1999) and *United States v. Adams*, 634 F.2d 830, 835 (5th Cir. Unit A 1981)). Participation may constitute harmless error. *United States v. Davila*, 133 S.Ct. 2139, 2149-50 (2013) (violation of Rule 11(c)(1) not structural error).

The language Ledezma relies upon to demonstrate his claim that this Court participated in the plea agreement process is from the sentencing transcript, two months *after* the Court accepted his guilty plea and two months *after* Ledezma signed his plea agreement with the government. At that point, the sole issue was whether Ledezma wished to withdraw his guilty plea. *See* D.E. 57, pp. 25-26.[3]

---

[2] **(c) Plea Agreement Procedure.**
   **(1) In General**. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. . . .

Fed. R. Crim. Proc. 11.

[3]
```
3 THE COURT: Are you trying to withdraw your plea? Is
4 that what you're doing?
5 DEFENDANT LEDEZMA: I, I mean, I, what I plead to,
6 what I had plead guilty to as to --
7 THE COURT: You pled guilty to a conspiracy with
8 intent to distribute more than 500 grams of methamphetamine.
9 That's what you pled guilty to.
10 DEFENDANT LEDEZMA: But that's not actually what I
11 was wanting to plead guilty to. I didn't --
12 THE COURT: Well, that was the charge.
13 DEFENDANT LEDEZMA: Okay.
```

Because the Court did not involve itself in plea negotiations, there was no basis for counsel to object. Ledezma has not established that counsel provided ineffective assistance.

3. *Counsel's failure to object to the government's alleged breach of the plea agreement*

Ledezma claims that the government breached the plea agreement at sentencing and counsel should have objected to the breach. He claims that his plea agreement was for him to plead guilty to one gram of methamphetamine and when the Court refused to sentence him on that basis, the government breached the plea agreement.

The plea agreement stated in pertinent part:

> 1. The Defendant knowingly and voluntarily agrees with the United States, through the United States Attorney for the Southern District of Texas, through the undersigned Assistant U.S. Attorney to plead guilty to Count Five (5) of the above numbered indictment.
> \* \* \* \*

---

> 14 THE COURT: There is no other charge for you.
> 15 DEFENDANT LEDEZMA: Uh-huh.
> 16 MR. ARISMENDEZ: Your call.
> 17 DEFENDANT LEDEZMA: I would like to withdraw my plea.
>       \*    \*    \*    \*
> 9 THE COURT: So you want to withdraw your plea? Is
> 10 that the bottom line?
> 11 DEFENDANT LEDEZMA: I mean, I would like to, yes,
> 12 review -- I mean, as far as to --
> 13 THE COURT: So then, so we just go to trial on
> 14 Monday? Can you get it together that quickly?
> 15 MR. ARISMENDEZ: Is that what you're trying to say?
> 16 DEFENDANT LEDEZMA: That's what I was about to ask,
> 17 ma'am, as far as to me withdrawing my plea is I still can't, I
> 18 mean, that's actually taking it to trial. Right?
> 19 THE COURT: Yes.
> 20 DEFENDANT LEDEZMA: Okay.
> 21 THE COURT: Those are the choices.
> 22 DEFENDANT LEDEZMA: But the thing is, is that I mean,
> 23 I understand what was -- I don't want to withdraw my plea. To
> 24 take it to trial, I wouldn't want to take it to trial, because
> 25 I know I –

*Id*.

> 5. Neither the Government nor any law enforcement officer can or does make any promises or representations as to what sentence will be imposed by the Court.
>
> 6. The defendant is aware that the sentence will be determined with reference to the *United States Sentencing Commission's Guidelines Manual* (U.S.S.G.). Defendant acknowledges and agrees that the Court may impose any sentence up to and including the statutory maximum, and that the sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a)(1) and (2), and § 3661. If the Court should impose any sentence up to the maximum established by statute, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.
>
> 7. Defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The defendant understands that the sentencing range is <u>advisory only</u>, therefore the Court may impose a sentence that is lower or higher than that range. The United States does not make any promise or representation concerning what sentence the defendant will receive.

D.E. 315 (emphasis in original).

The plea agreement states that Ledezma agreed to plead guilty to Count Five of the Second Superseding Indictment. That charge is for conspiracy to possess with intent to distribute "*more than five hundred (500) grams* of a mixture or substance containing a detectable amount of methamphetamine." D.E. 271 (emphasis added).

Plea agreements are construed according to general contract principles. *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013); *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008). When interpreting a contract, the court looks to the language of the parties, unless ambiguous, to determine the intention of the parties. *Long*, 722 F.3d at 262. When a defendant claims breach of the agreement, he bears the burden of demonstrating the underlying facts to

establish breach by a preponderance of the evidence. *Id*.; *United States v. Roberts*, 624 F.3d 241, 246 (5th Cir. 2010).

The language of the plea agreement with respect to the charge to which Ledezma pled guilty is unambiguous. He pled guilty to the only count in the indictment with which he was charged, Count Five. Ledezma testified at rearraignment that he understood the charge against him and discussed it with counsel. D.E. 415, pp. 20-22. Ledezma denied that he was offered any inducement to plead guilty other than stated in the plea agreement. *Id*., pp. 30. Additionally, during the discussion of enhancements before Ledezma pled guilty, the AUSA stated, "the amount of methamphetamine we believe is more than 1.5 kilograms of ice." *Id*., p. 45.

Although at rearraignment the government agreed that Ledezma could challenge the drug quantity for which he was held responsible at sentencing, Count Five does not charge Ledezma with a maximum amount of methamphetamine, it only set a minimum quantity. As a result, the government's argument that Ledezma was responsible as a member of the conspiracy for the entire amount did not breach the plea agreement. Since there was no breach, counsel had no reason to object to the government's breach of the plea agreement. Ledezma has not met his burden to demonstrate that counsel's performance was deficient.

4. *Counsel's failure to submit type and purity of the controlled substance to the jury*

Ledezma complains that counsel failed to obtain jury findings as to the type of drug and its purity from the jury on a special verdict form. Ledezma waived his right to a jury before he pled guilty.[4] Counsel could not have obtained a jury verdict on the type and purity of the drug. Ledezma's complaint of counsel's performance is without any evidentiary basis and is overruled.

---

[4]
    24 Now, here are the trial rights that you're giving up
    25 by entering a guilty plea here today. I want to make sure you
    1 understand them and have discussed them with your attorney. Do
    2 you understand that under the Constitution and laws of the

5. *Counsel's failure to submit lab reports and challenge the drug type during sentencing*

Ledezma complains that he was sentenced based upon highly pure methamphetamine when the drugs he was involved with were ordinary methamphetamine. He claims the difference results in a base offense level increase of 6 levels.

The PSR reflects that the six bundles of methamphetamine with a net weight of 5.661 kilograms and 90% purity were seized from the Allendale house on May 2, 2010, during the conspiracy period alleged in Count Five. D.E. 374, ¶ 7. In addition to the six bundles, agents seized a small bag of methamphetamine with a net weight of .37 grams, 98.7% purity, and two additional bags of methamphetamine with a net weight of 94.5 grams, 97.8% purity. *Id*. The Probation Department calculated that Ledezma was responsible for 5,209.76 grams (5.21 kilograms) of methamphetamine that based upon its purity was considered "ice." *Id.*, ¶ 18.

The government made known at rearraignment that there was a possible enhancement for purity.[5] In addition, the government's recitation of the facts included a description of the

---

3 United States, you're entitled to a trial by jury on the
4 charges against you and you have a right to plead not guilty?
\*   \*   \*   \*
1 . . . And if you plead guilty, you give up all these
2 valuable trial rights. And if you plead guilty and I accept
3 your plea, there will not be a trial, and I'll enter a finding
4 of guilty and sentence you on the basis of your plea after
5 considering presentence investigation report, the advisory
6 sentencing guidelines, the factors in 3553(a), and of course
7 the statutory range of imprisonment.
8 Do you understand these matters and have you
9 discussed them with your attorney, . . .?
\*   \*   \*   \*
15 THE COURT: Mr. Ledezma.
16 DEFENDANT LEDEZMA: Yes, ma'am.

*Id.*, pp. 25-27.

5
22 . . . . And the amount of
23 methamphetamine we believe is more than 1.5 kilograms of ice.
24 THE COURT: So that's an enhancement for the purity.
25 MR. HESS: Yeah. It's actually -- it's what the base

brokering activity that Ledezma engaged in and the quantity of drugs that he attempted to facilitate, which corresponded with the quantity of drugs found during the search of the Allencrest house. Ledezma agreed that those facts were correct, although he reserved his right to contest drug quantity at sentencing.[6]

Ledezma's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the

---

> 1 offense level --
> 2 THE COURT: Okay.
> 3 MR. HESS: -- scores it on that.
> 4 THE COURT: Do you understand these matters and have
> 5 you discussed them with your attorney, . . .
> 9 THE COURT: Yes? Okay. Thank you.
> 10 Mr. Ledezma.
> 11 DEFENDANT LEDEZMA: Yes, ma'am.

D.E. 415, pp. 45-46.

[6]
> 12 All right. As to Count Five, Mr. Ledezma, have you
> 13 heard the statement of the Assistant U.S. Attorney?
> 14 DEFENDANT LEDEZMA: Yes, your Honor.
> 15 THE COURT: You need to speak up please, sir.
> 16 DEFENDANT LEDEZMA: Yes, your Honor.
> 17 THE COURT: Is it correct?
> 18 MR. ARISMENDEZ: We too would join with Mr. Thomas
> 19 here, your Honor, on that one issue. We realize it's a
> 20 sentencing issue. We would assert that at that time as to the
> 21 scope being the one ounce that he was actually involved in
> 22 that.
> 23 THE COURT: One ounce?
> 24 MR. ARISMENDEZ: Or the telephone conversation, I'm
> 25 sorry, whatever.
> 1 THE COURT: One gram.
> 2 MR. ARISMENDEZ: One gram, I apologize.
> 3 THE COURT: All right. So that -- you're reserving
> 4 that issue for sentencing.
> 5 MR. ARISMENDEZ: Yes, Judge.
> 6 THE COURT: Okay. Anything else you disagree with,
> 7 Mr. Ledezma?
> 8 DEFENDANT LEDEZMA: No, ma'am.

*Id.*, pp. 86-87.

defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Moreover, during sentencing, after the government agreed not to oppose Ledezma's objection to the firearms enhancement, Ledezma testified there were no other mistakes in the PSR which included the purity he now contests. His current complaint contradicts his prior sworn testimony.

Ledezma has not presented any evidence to contradict the PSR recital of the purity of the methamphetamine. "[A] district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) (quoting *United States v. Cabrera*, 288 F.3d 163, 173-74 (5th Cir.2002)). It is the defendant's burden to demonstrate that the information in the PSR is untrue, inaccurate, or unreliable. *Id.*; *United States v. Gracia*, 983 F.2d 625, 630 (5th Cir. 1993). Ledezma has not met that burden.

Ledezma claims he has requested the lab reports through a FOIA investigation and requests the Court abate his motion until he receives them. Ledezma has provided this Court nothing other than his own assertion, which contradicts his earlier sworn testimony, to doubt the accuracy of the information in the PSR. The Court denies Ledezma's motion to abate the proceedings.

The Court finds that counsel's failure to introduce laboratory reports did not prejudice Ledezma at sentencing. No ineffective assistance of counsel is shown.

### V. CERTIFICATE OF APPEALABILILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §

2253(c)(1)(A). Although Ledezma has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ledezma is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Ledezma's motion to abate these proceedings is DENIED; his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 726) is DISMISSED; and he is also denied a Certificate of Appealability.

SIGNED and ORDERED this 2nd day of December, 2014.

_____
Janis Graham Jack
Senior United States District Judge